CONOVER vs. WARDELL and others.

1. A suit may be maintained to compel the performance of a contract performed only in part, and a party will not be precluded by his acceptance of a deed in performance of the contract, when such acceptance was under a mistake as to the contents or effect of the deed.

2. If parties, by writings executed at the time, settle and fix what is meant by a name used in their dealings, the meaning fixed will be taken in preference to any other.

3. Where, under a contract for the conveyance of land, the vendee got the precise land he bargained for by the very lines pointed out to him, and by the precise lines designated in the written contract, this court will not, in a suit for specific performance, compel a conveyance of additional land, because a general expression "homestead farm," used in the written contract as synonymous with the description in the deed, may be construed to mean more by certain artificial rules of legal construction, but will leave the complainant to his remedy at law.

This cause was brought before the court for final hearing, upon the pleadings and proofs.

*Mr. W. H. Vredenburgh* and *Mr. J. Parker*, for complainant.

*Mr. R. Allen* and *Mr. B. Williamson*, for defendants.

THE CHANCELLOR.

Henry Wardell died in 1852, intestate, seized of a farm near Long Branch, in Monmouth county, on which he resided at his death, containing several hundred acres of land. He had, in his lifetime, conveyed several lots cut off from the south part of this tract. Administration of his personal estate was granted to the defendant, Elizabeth Wardell, his widow, and one Jordan Woolley, who, by order to the Orphans Court, sold a tract of about fifty acres of the north part, now known as the Ocean House property, to Henry E. Riell, and she, with the children and heirs of Henry Wardell, had conveyed a tract from the southeasterly part of the Long Branch and Sea Shore Railroad Company. Henry Wardell left six children, who were his only heirs-at-law, one of whom, Henry H. Wardell, in 1855, conveyed his share in the real estate of his father to Elizabeth Wardell, his mother. The widow had removed from the farm into the village of Long Branch before 1855, and one of her sons, Edward Wardell, was living in the mansion-house, and had possession of the farm.

The first course in the deed is along a fence and ditch which have been there for fifteen years or more, and the land south of it was offered for sale by the administrators a few years after Henry Wardell's death. Part of it had been sold by the defendants before 1868, by parol agreement, to the owners of the adjoining lands, who had taken possession of these parts, although the agreements were never carried out. In June, 1865, the widow and heirs of Henry Wardell had agreed among themselves to sell the farm north of this line, and to reserve the part south of it to enable them to fulfill their parol contracts, and authorized the defendant, Morris, who was a real estate broker at Long Branch, to sell the farm north of that line.

The complainant, in the latter part of June, 1865, applied to Morris to purchase a farm. Morris immediately took him to this farm, and showed it to him. The part which they first approached was the south boundary or the beginning

corner, near the school-house, on the public road over which they were driving. Morris, according to his own answer and testimony, here pointed out to the complainant the beginning corner and the south line along the fence and ditch, which is the first course in the contract and deed. But this fact is denied by the complainant in his testimony. The complainant then told Morris to procure a power of attorney from the other defendants who were the owners of the farm, to enable him to sell it, and said he would then make a bargain with him. Morris procured a power of attorney within a day or two, and on the 26th day of June, 1865, the same day on which the power is dated, made a contract, in writing, with Conover, to convey the farm to him for $30,000; Conover joined in the contract and agreed to purchase at that price. On the 30th of October, 1865, the defendants, excepting Morris, executed a deed dated October 28th, to the complainant, which was accepted by him as a fulfillment of the contract, and he paid or secured to them the price which has since been fully paid. On the 1st of November, 1865, Morris executed to the complainant a deed of bargain and sale, dated October 28th, with covenants against his own acts, by which, in consideration of $1, he conveyed all his right and title in the premises.

The complainant claims that the defendants were bound by the contract to convey to him all the homestead farm, owned by Henry Wardell at his decease, except such parts as had been sold and conveyed before that contract; alleging that he was induced to accept the deeds as a fulfillment of that contract, by the false assertion of Morris, the agent, at the delivery of the deeds, that all the land south of the first course had been sold. He claims that the contract was to convey the farm known as "the Wardell farm," or the homestead farm of the defendants, except such parts as had been conveyed away.

The power of attorney authorizes Morris to sell and convey "all our homestead farm, on Fresh Pond, beginning at or near the Fresh Pond school-house, in the middle of the

highway, and running easterly as the ditch and fence now stands, to the sea or ocean," &c., to the place where it began; "supposed to contain about five hundred acres, reserving thereout say one hundred acres conveyed to a Mr. Neail (Riell), and to the Long Branch Railroad Company." The contract agrees to convey "all that tract or parcel of land lying and being on Fresh Pond, in Ocean township, Monmouth county, *and* known as the Wardell farm, *and* begins in the middle of the road leading from Long Branch to Fresh Pond, near the corner of the Fresh Pond district schoolhouse, and runs easterly, as the ditch and fence now stands, to the sea shore," thence and along several courses to the beginning; "supposed. to contain five hundred acres, be the same more or less, reserving the right of way deeded to the Long Branch Railroad Company."

The deed from the widow and heirs conveyed all that certain farm and tract of land situate, &c., beginning in the centre of the road from Land's End to Raccoon island, and near the corner of the Fresh Pond district school-house; thence (1) along the line of William West and others north 67° 15' east, 25 chains, more or less, to the Atlantic ocean at low water mark, and following by courses and distances to the place of beginning, "supposed to contain five hundred acres, more or less; it being the same premises that Henry Wardell died possessed of, and it being hereby intended to convey to said Conover all the land and premises lying within the above boundaries" (except the parts conveyed to the railroad company, and to the United States for a life boat station, in 1849). The railroad lot and life boat lot are included in the boundaries, the lot in question is not; and it is admitted that the beginning point stated in the power of attorney in the contract and the deeds is the same. In the deed from Morris the description of the land is verbally the same as in the other deed, to the statement of the supposed contents; it then adds: "It being the intention of the party of the first part hereto, to convey to said Conover all the right, title, power, or interest which has vested or

z *

may vest in him by power, or under a certain power of attorney," describing the power; and further adds: " The above premises are known as the farm of Henry Wardell, deceased, and the widow and heirs of said Henry Wardell, deceased, have, by deed of even date herewith, conveyed directly to said Conover."

It is shown that the farm occupied by Henry Wardell, at his death, included the tract in question, and also had once included a tier of lots south of it and fronting on the public road, sold to West and others, and also the Ocean House tract, sold to Riell; all which are not included in the boundaries specified in the deeds, or the contract, or power.

After the contract the defendants gave to Conover the old maps and deeds for the tract composing the farm, by which it appeared that the farm once included the disputed tract, and the tier of lots south of it. These maps and papers were given to Mr. Ryall, the counsel, who, at the request of Conover, was employed to prepare the deeds. He told Morris, in the presence of Conover, that the farm originally extended further south than the course along the fence and ditch, and asked how he ascertained this straight line to be the south boundary; Morris replied because they owned no land to the south of it, for they had sold all the land lying to the south of that line. Morris states that until long after that time he was under that impression that all south of that line was sold. At the request of Conover, he procured the land to be surveyed and mapped by W. R. Mapes, between the contract and the delivery of the deed. This map Conover and his counsel had before, and at the drawing of the the deed; it showed the beginning point near the school-house, and that the first course ran north of the land in question.

The bill in this case is in effect to compel the defendants to perform specifically their contract by conveying to the complainant a part of the land which, by the contract, they agreed to convey, but which was not included in the deed to him, which he was induced to accept by the representation

that it included the whole of the farm which he supposed he had bought.

A suit may be maintained to compel the performance of a contract performed only in part, and a party will not be precluded by his acceptance of a deed in performance of the contract, when such acceptance was under a mistake as to the contents or effect of the deed.

In this case there is no fraud or misrepresentation. For, although Morris said all south of the line was sold, he supposed in good faith that it was, and there was no mistake in fact, either as to the land in the contract, or the land conveyed by the deed. If Morris is to be believed, the complainant was distinctly shown the beginning corner, and the south line of the farm, as specified in both contract and deed, before the contract was signed. I am inclined to believe Morris. The testimony of Conover amounts only to the fact that he does not recollect this line being pointed out to him, and it is neither impossible nor very improbable that he would have forgotten it, as, on the first view of a strange farm, this would not impress itself as of any importance, while the testimony of Morris is positive. And it is hardly of itself probable that a broker, in showing a farm to a hoped-for purchaser, would pass the first boundary they came to without pointing it out. If this is true, the deed conveys the very tract that was shown to and examined by him in the negotiation for sale, and that was understood by him as the tract he bought, and by Morris as the tract he sold. When the deed was being made out, and when it was delivered, he distinctly understood that this was the south boundary, and that the lands south of it formed a part of the old farm or homestead of Henry Wardell. A reason was given for this not being sold or included in the deed. The reason, by the mistake of Morris, was not the true one, but this has nothing to do with the question whether Conover understood exactly what was in the deed, and that the lands he now claims were not included. The vendors were guilty of no fraud or false representation, either in fact or law.

Morris was not authorized to sell any lands south of that line, and any representations he made about them were outside of his authority.

There was, then, no fraud or mistake in point of fact, as the complainant got the land which was pointed out to him, both before the bargain and before the deed, as the land to be sold. But the claim of the complainant is based upon the position that the words of the agreement, by their correct legal construction, entitled the complainant to a conveyance of more land than Morris understood that he was selling, or the complainant understood that he was buying, and therefore he asks a conveyance for that part.

There is certainly authority for contending that, in a deed, words like those in this contract might be held to convey the whole of "the Wardell farm," if there was a farm known by that name, although the whole was not included in the boundaries specified. But there are authorities entitled to great respect on the other side. And this construction depends upon artificial rules that, even in many cases where by authority they are clearly applicable, evidently do not affect the true intention of the parties. In applying the maxim, "*falsa demonstratio non nocet*," it is sometimes difficult to say which part of the description is intended to designate the subject matter, and which is matter of description or demonstration. In a deed poll, or executed by one party, the rule of *fortior contra proferentem* would affect the construction. But, even in a deed, I doubt whether words like these in this contract, "that tract lying in Ocean township, *and* known as the Wardell farm, *and* begins in the middle of the road," &c., would be held at law to convey more than the lands contained in the boundaries specified. If the land had been described as the tract known as the Wardell farm, butted and bounded as follows, it might, by the authorities, have been conveyed; but, after mentioning the location of the tract, it designates it by the name, " Wardell farm," and by the description, both connected to it by the word *and*, in

a way that neither is entitled to preference over the other as the principal designation.

There is another difficulty which would affect these words in a deed. The words, "the Wardell farm," are only of value by being a name applied to a definite and certain tract of land well known by that name. There is not sufficient evidence of this name being applied to any tract of known and certain boundaries, and very little of it having been generally or usually, or to any extent, applied to any tract at all. It once is said to have included the Ocean house tract, once the tier of lots fronting on the road sold off by Henry Wardell, once the railroad tract; and it might be well doubted, after this tract in dispute had been set off for sale and offered for sale, parts sold by parol and put in possession of the purchaser, and not occupied or cultivated, so far as appears, with the rest of the farm, whether it would be included in the designation of the Wardell farm. The owners had the right to cut off these lots for sale, and to call them their lots, and the residue their homestead farm. If they had done so before such deed, and conveyed the residue to the purchaser, designating the rest in the deed as the homestead farm, and pointing it out on the ground to him as such, I am not aware of any rule of law that would make the deed convey the part set off as building lots, even if once part of the homestead farm, or of the tract known as such.

But in this suit I am not called upon to construe the legal effect of these words in a deed. In a court of equity, where justice and fair dealing is at the foundation of all relief, and in a suit for specific performance, when the extraordinary power of the court is called upon, and in which relief is never granted if against good conscience or if any injustice or hardship is inflicted, relief is asked in a case where the complainant has got the precise land he bargained for, by the very lines pointed out to him, and by the precise lines designated in the written contract, because a general expression, "homestead farm," used in the written contract as synonymous with this description, may be construed to mean more,

by certain artificial rules of legal construction. If one should sell to another a city lot, of twenty-five feet by one hundred, which both had inspected and agreed upon, and in the contract should agree to convey *the* land conveyed to him by A B, instead of land conveyed by A B, and should describe it by metes and bounds as a lot of twenty-five by one hundred feet, if it turned out that the tract conveyed by A B contained twenty acres, the purchaser could hardly prevail upon a court of equity to order a conveyance of the twenty acres for the price of one lot, but would leave the complainant to his remedy at law.

Besides, in this case, the deed from Morris to the complainant, executed and delivered with the deed from the other defendants, and which, perhaps, has no other significance in this suit, settles what the parties to this transaction meant to designate by the Wardell farm. Conover so used the name, Morris so used it, and the other defendants so used it. And if parties, by writings executed at the time, settle and fix what is meant by a name used in their dealings, the meaning so fixed will be taken in preference to any other.

I am of opinion that, under these circumstances, the complainant has no right to call upon this court to decree specific performance, but, if entitled to any relief, must be left to his remedy at law for damages by not performing the contract.